1  A.  Like I was saying, he had his cap on. He never really
2      raised his cap up. He always-- when me and him were
3      talking, he was -- he never looked me in the face.
4      He-- whoever talking to him, he can't look them in the
5      face. He kind of shy off, you know?
6  Q.  Did you look into his face?
7  A.  Yeah, I looked into -- me and the man was almost eye
8      to eye. He was telling me good things about how he
9      good guy, man I help people. I was handicapped and I
10     just really knew this man was helping me.
11 Q.  And how long did you look into his face the second
12     time he came back?
13 A.  Oh, second time he came back, I looked in his face
14     quite awhile. Then he had the gun in my side telling
15     me give me the rings. I was looking him right in the
16     face. Then when I rushed back and she laid her hand
17     in my hands and he pulled the rings off, I looked
18     right in his -- eye to eye.
19 Q.  Okay. Thank you --
20 A.  Eye to eye.
21          MS. CEZIL: Thank you. No further
22     questions.
23          MR. HOWARTH: One more question.
24          RECROSS-EXAMINATION
25 BY MR. HOWARTH:

```
 1  Q.   Mr. Stone, when the guy came back the second time --
 2  A.   Um-hum.
 3  Q.   -- did you assume that that was the same guy that he
 4       had talked to the first time?
 5  A.   I knew he was.
 6            THE COURT:  Okay.  That's it, in terms of
 7       the questioning of Mr. Stone.  Is there anything else?
 8            MS. CEZIL:  Yeah-- no, your Honor.  Thank
 9       you.
10            THE COURT:  Thank you, Mr. Stone.  You can
11       step down.  Wait in the hallway.
12            MS. LILLIARD:  Your Honor, as relates to --
13       before I make a motion to bind over, as it relates to
14       count number -- I guess I should wait for the witness
15       to leave.
16            THE COURT:  You can go ahead.
17            MS. LILLARD:  As it relates to Count VIII,
18       possession by the felon, the defendant is currently on
19       probation to Third Circuit Court as of September of
20       2012 before Judge Ewell for one count of robbery,
21       unarmed and that was a conviction date of 9-6, 2012.
22       This is for exam purposes only.
23            Additionally, the defendant has a prior
24       conviction for resisting and obstructing a police
25       officer, causing injury, dated April 16th, 2008 and
```

```
 1    the defendant -- I believe those are the two prior
 2    felonies for which his right to possess a firearm have
 3    been taken away and have not been restored at the time
 4    of this offense, which was December 31st, 2012.
 5              THE COURT:  Mr. Howarth, is that a correct
 6    stipulation for purpose of preliminary examination
 7    only?
 8              MR. HOWARTH:  It is.
 9              MS. LILLARD:  Judge, based on the testimony
10    that you heard from both James Stone and Lucille
11    James, we do believe that a sufficient question of
12    fact for the trier of fact has been raised to all
13    counts, that the defendant, while armed with a weapon,
14    did force Lucille James and James Stone to remain in
15    their vehicle for the purposes -- for the purpose of
16    having criminal sexual contact with the complainant,
17    Lucille James and that he also robbed both Lucille
18    James and James Stone of both money and jewelry and
19    that once, while armed with that weapon, and while
20    forcing them both to remain in the vehicle, he forced
21    his penis inside the genital opening of Lucille James
22    one time.  I believe there was some testimony that she
23    felt his penis inside of her vagina, inside of her
24    genital opening one time.
25              Additionally, the defendant pointed that
```

```
 1    weapon, the firearm, which was described as a pistol
 2    by both James Stone and Lucille James, he pointed that
 3    weapon at them.  Both witnesses testified that they
 4    felt afraid, that they complied with all of his
 5    instructions because he was armed with that weapon.
 6              James Stone indicated that once the
 7    defendant pressed the weapon into his side, he was
 8    afraid that he would be shot and then that he then
 9    demanded that his wife hand over both money and
10    jewelry to him, that he then, in turn, gave to the
11    defendant, Howard McKnight, both witnesses positively
12    identified the defendant and gave testimony about
13    their ability to identify him during a photo lineup.
14    And based upon that testimony, your Honor, I would ask
15    that defendant be bound over as charged.
16              MR. HOWARTH:  Your Honor as to the nine
17    charges, I imagine they're jury questions.  I would
18    have to challenge, your Honor, the evidence that's
19    been brought out this morning as to Count II, the
20    kidnapping of James Stone.  I'm not arguing it as to
21    Lucille James, that there was a restraint in
22    kidnapping of James Stone and that under the facts
23    that are testified as to both complaintants and
24    testified, I do not believe that that should be bound
25    over.
```

1  THE COURT: Anything as to that point from prosecution?

2  MS. LILLARD: Certainly the testimony was, specifically, of James Stone that he was standing outside of the vehicle and that the defendant then ordered him, at gun point, to walk around to the front of the vehicle until such time that he could place the pistol and press it into the chest of his wife. Once the pistol was in the chest of his wife, he then ordered James Stone to go back around to the driver side of the vehicle, get inside and hold his hands on the steering wheel and while he -- and it was at that point that he began doing that he said I'm going to fuck your wife.

So clearly, his purpose in ordering James Stone around the vehicle was so that he could place the gun and point it on Lucille and then in order to control James Stone and force James Stone to get back inside the vehicle, so that he could follow through with his threat and sexually assault his wife.

So I think, clearly, upon the facts that are established by James Stone, he was also the victim of a kidnapping for purpose of effecting a sexual assault.

THE COURT: I think that's a correct

```
 1    resolution, what the prosecutor said, that was the
 2    correct resolution of the evidence that has been
 3    presented.
 4              The testimony is that on December 31st,
 5    2012, Lucille James and James Stone were not married,
 6    did have children together, went to the casino.
 7              She said she went to the casino, one of the
 8    purposes was to get some trinkets and toys and
 9    whatnot, for their grandchildren.  On the way back
10    from the casino-- she said they had one beer prior to
11    going to the casino, however, Mr. Stone, after leaving
12    the casino, the truck that they were traveling in
13    caught a flat and they had to pull over.  And they
14    pulled over in the area of, I believe, Bradford and
15    Findlay in the City of Detroit and they had contact
16    with the defendant, Mr. Howard McKnight, who initially
17    acted as if he was helping two complainants, helping
18    them with their vehicle, trying to assist them with,
19    either, repairing the vehicle or getting some
20    assistance with the vehicle.  He then left for five
21    to ten minutes, maybe, came back to the location and
22    that's when he presented a handgun at different times,
23    at Ms. Stone and Mr. James.  And what he did was he
24    robbed miss -- he rob them, demanded their money and
25    actually ascertained or took in, I believe, money and
```

jewelry. I believe she said she had a necklace, white diamond necklace, gold necklace that was taken and $285.00 cash.

Mr. Stone turned his pockets over, but did hand some of the items to the defendant from Miss James.

The criminal sexual contact, first degree is substantiated by the testimony of Miss James that the defendant put his penis in her genital opening, I believe she said, for two to three minutes. He was telling her not to look up. And she believed that he may have ejaculated or urinated in her, she wasn't certain. Also, I agree with the prosecution, in terms of kidnapping of both because he forced them and restrained them in that motor vehicle to complete the sexual act and a portion of robbery, at least, for Miss James.

The felonious assaults are proven or shown satisfied here, the elements of that, that the gun was pointed at both complaintants at different times and also after the defendant flees down the block, he fires three shots somewhere in the direction of the complainants. So those all go to show the felonious assault.

And then there is stipulation to the

```
 1    defendants prior convictions for purpose of Count
 2    VIII.  I do find that he possessed a handgun for the
 3    purpose of probable cause and it was a real handgun
 4    because the weapon was actually fired.
 5              This is one of the more horrific crimes
 6    that I have heard in my experience and it's kind of a
 7    nightmare-like incident, one that was made worse by
 8    the police or any emergency responders not showing up
 9    after Miss Lucille James and James Stone, you know,
10    tried to call 911 and did call 911 and have to wait 30
11    minutes, combined with this horrible incident, had to
12    walk to their destination after having had
13    experienced such a horrible incident.
14              So I do find probable cause to bind the
15    defendant over as charged.  I think that the
16    prosecution satisfied their burden of probable cause
17    and the defendant will be bound over to Third Circuit
18    Court for arraignment on the information on all the
19    charges contained in this complaint.  That date is
20    going to be January 29th, 2013.
21              MS. LILLARD:  Thank you, your Honor.
22              MS. CEZIL:  Thank you.
23              THE COURT:  The pictures are up here.
24              MS. LILLARD:  Your Honor, we also have order
25    for HIV and infectious disease testing to present to
```

```
 1      the Court.   If I may approach?
 2                   THE COURT:  Yes.
 3                   MS. LILLIARD:  Thank you, your Honor.
 4                   (Proceedings concluded at approximately
 5              12:45 P.M.)
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                CERTIFICATE OF COURT REPORTER
 2

 3     STATE OF MICHIGAN   )
 4                         ) SS
 5     COUNTY OF WAYNE     )
 6

 7          I, BETH A. TOMASI, CSR-3098, Official Court
 8     Reporter in and for the 36th District Court for the
 9     City of Detroit, County of Wayne, State of Michigan,
10     do hereby certify that the foregoing pages, 1 through
11     111, comprises a complete, true and accurate
12     transcript of the proceedings had in the
13     above-entitled cause.
14
15
16
17                         _Beth A. Tomasi_
18                         _____
19                         BETH A. TOMASI, CSR-3098
20                         CERTIFIED SHORTHAND REPORTER
21
22          Mechanically reproduced copies of this
            transcript are not certified unless the certificate
23          page bears an original signature.
24     DATED:  February 15, 2013
25
```